IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION AT CHATTANOOGA

_____

RONNIE ALLEN § 
 § 
 Plaintiff, § 
 § 
v. § Case No._____
 § JURY DEMANDED
SEELBACH AND CO., INC. § 
 § 
 Defendant. § 

_____

**COMPLAINT**

_____

**COMES THE PLAINTIFF, RONNIE ALLEN**, filing this Complaint against the Defendant, **SEELBACH AND CO., INC**. He shows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, **RONNIE ALLEN**, is a citizen and resident of Riceville, Tennessee.

2. Defendant, **SEELBACH AND CO., INC**., is a foreign corporation (Georgia) operating within this judicial district wherein it employed the Plaintiff. Plaintiff's work occurred in Counties including Bradley, McMinn, and Polk.

3. This Court has subject matter jurisdiction under 28 U.S.C. §1331,

Page 1

42 U.S.C. §1981, and Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) et. seq. Additionally, this Court has diversity of citizenship jurisdiction as the parties are "citizens" of different states and the amount in controversy exceeds $75,000. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, received a Notice of Right to Sue dated November 9, 2012, and has now timely commenced this action within ninety (90) days thereafter. Accordingly, Plaintiff has exhausted administrative prerequisites under Title VII. This Court has supplemental jurisdiction over Plaintiff's claims under the Tennessee Human Rights Act (THRA), Tenn. Code. Ann. 4-21-101 et. seq.

4. Venue in this Eastern District of Tennessee is proper pursuant to 28 U.S.C. §1391, because the Defendant was either doing business in this district or resides in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BASES FOR SUIT

5. Plaintiff began working for Defendant in 2009 as a Groundsman. In August 2010, Plaintiff became a Chip Truck Driver and, in October of 2010, he became Equipment Operator running a bush hog.

### A. THE RACIALLY HOSTILE WORK ENVIRONMENT

6. Plaintiff is an African American male.

7. Plaintiff was the only African American among a crew of more than one hundred.

8. Plaintiff's hiring was brought about by a recommendation from Volunteer Electric Cooperative, an entity with whom Defendant contracts. Thus, Plaintiff, the only black person, was not viewed as being hired through the normal means and, as a black person, his hiring was not well received.

9. Plaintiff's first general foreman was a white man named Jeff Green.

10. Beginning in 2009, Green gave Plaintiff the humiliating and racially demeaning nickname, "Yard Ape." Green, along with other crew members began calling Plaintiff many racially humiliating names, on a daily basis, including: "Monkey boy," "Nigger Pines," "Yard Ape," or just "Nigger."

11. Plaintiff reported the racial harassment to an official at Volunteer Electric Cooperative, an entity with whom Defendant contracts and who was instrumental in Plaintiff's hire with Seelbach.

12. Following Plaintiff's report, Mr. Green gathered crew members, including Plaintiff, and condescendingly stated that due to a complaint, crew members could not refer to Plaintiff as "Nigger," "Nigger Pines," "Yard Ape," or "Monkey Boy" any more. However, these names did not stop, including up until shortly before Plaintiff's termination in January of 2011. Thus, the

name calling was "serious or pervasive," amounting to a hostile work environment based upon Plaintiff's race.

13. In addition to the racially charged name calling, Plaintiff suffered racially inflicted injury when a crewmember repeatedly cut trees and brush and made them fall upon Plaintiff's head—more times than could be an accident. Plaintiff's reports to Jeff Green were ignored.

14. Defendant also denied Plaintiff equal treatment by denying him training and advancement it made available to whites.

15. Also, Defendant made a pattern of writing Plaintiff up for things like "mowing" and "property damage" notwithstanding the nature of Plaintiff's bush-hogging duties and the inherent prevalence of such incidents.

16. Additionally, in both January of 2010, and January of 2011, Plaintiff requested to be off for Martin Luther King Day. MLK Day is a national holiday which is observed in January of each year. However, Plaintiff's request to observe it resulted in racially motivated response and retaliation in the form of discipline for observing the holiday.

### B. RACIALLY DISCRIMINATORY AND/OR RETALIATORY DISCHARGE

17. On or about January 14, 2011, Plaintiff requested the upcoming Martin Luther King day to be off. Plaintiff stated he wished to observe this national holiday. However, Plaintiff's general foreman stated the company

"does not recognize" the holiday, and expected Plaintiff not to take off.

18. Fearing he would receive retaliation, on January 17, 2011, Plaintiff wrote a letter to Defendant's management, copying his general foreman, and requesting additional training be provided to him. Such training was not provided.

19. The next day, Plaintiff's general foreman advised Plaintiff not to report to work at all on January 18, 2011 and for Plaintiff's ride to leave him at home because Plaintiff's "tractor was down."

20. On January 24, 2011, Defendant terminated Plaintiff's employment on the stated grounds that he "mowed down a fence" and "mowed down two apple trees."

21. In truth and fact, tearing a rusted wire in a barbed wired fence is a rather common, not uncommon event—so common, in fact, that workers carry additional wire on their trucks and routinely patch these wire fences, which Plaintiff did in this instance. As for the "apple trees," these were small structures which, too, were common for mowing given the nature of the work with a bush-hog. Nonetheless, Defendant used these ordinary occurrences as a pretext to terminate Plaintiff's employment.

22. The racial harassment, as well as the termination, was hurtful to Plaintiff. These actions did cause him humiliation, embarrassment, worry,

anxiety, and, with respect to the termination, financial distress. Plaintiff seeks compensatory damages, along with injunctive relief of reinstatement, full back pay, front pay to the extent applicable, and punitive damages because the actions were taken in reckless indifference to Plaintiff's federally protected rights. Plaintiff also seeks his reasonable attorneys fees, along with costs.

## LEGAL CAUSES OF ACTION

23. Plaintiff brings the following causes of action against Defendant:

   A. <u>Section 1981:</u>

   1. <u>Race Discrimination (Hostile Work Environment);</u>

   2. <u>Race Discrimination (in Discipline and Discharge);</u>

   3. <u>Retaliation (for complaining of race discrimination)</u>

   B. <u>Title VII:</u>

   1. <u>Race Discrimination (Hostile Work Environment);</u>

   2. <u>Race Discrimination (in Discipline and Discharge);</u>

   3. <u>Retaliation (for complaining of race discrimination)</u>

   C. <u>Tennessee Human Rights Act:</u>

   1. <u>Race Discrimination (Hostile Work Environment);</u>

   2. <u>Race Discrimination (in Discipline and Discharge);</u>

   3. <u>Retaliation (for complaining of race discrimination)</u>

24. Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests

Defendant Answer this Complaint, that Plaintiff be awarded all compensatory and punitive damages available, any other equitable relief, wage and benefit losses, attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which they may be entitled.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
633 Chestnut St., Suite 600
Chattanooga, TN 37450
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

Jonathan L. Bobbitt (TN Bar No. 023515)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jbobbitt@gilbertfirm.com

**ATTORNEYS FOR PLAINTIFF**